UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GWENDOLYN NAAG HANFORD, | § | |
| | § | |
| *Plaintiff-petitioner*, | § | |
| | § | |
| v. | § | Civil Action No. SA-08-CV-795-XR |
| | § | |
| JANET NAPOLITANO, Secretary, U.S. | § | |
| Department of Homeland Security; | § | |
| MICHAEL AYTES, Acting Director, U.S. | § | |
| Citizenship and Immigration Services, | § | |
| | § | |
| *Defendants-respondents*. | § | |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

On this date, the Court considered Plaintiff's and Defendants' cross motions for summary judgment (Docket Entry Nos. 9 & 29) and their responses (Docket Entry Nos. 37 & 40). The question that is before the Court for resolution—whether the decision of Defendants to automatically deny the properly filed application for adjustment of status is based upon a permissible interpretation of the statute—is a question of law. After reviewing the motions and replies, Plaintiff's motion for summary judgment (Docket Entry No. 37) is GRANTED and Defendants' motion for summary judgment (Docket Entry No. 29) is DENIED.

**Background**

The facts of this case are not disputed by the parties. Plaintiff, Gwendolyn Naag Hanford, is a citizen of the Philippines. She entered the United States legally on a K-1 visa as the fiancée of Steven Allen Hanford, a citizen of the United States, on October 15, 1996. To obtain the K-1 visa,

Mr. Hanford filed a Form I-129F Petition for Alien Fiancé(e) as required by 8 U.S.C. § 1184(d)[1]; 8 C.F.R. 214.2(k)(1), which the Defendants received on May 9, 1996, and approved on June 5, 1996.[2] In compliance with the requirements of the K-1 visa, Plaintiff married Mr. Hanford on December 12, 1996, within ninety days of her admission to the United States. Twenty-five days later, on January 6, 1997, Ms. Hanford filed a Form I-485 Application to Register for Permanent Residence or to Adjust Status pursuant to 8 U.S.C. § 1255(d)[3]; 8 C.F.R. § 245.2(c). Defendants' denial of Form I-485 is the subject of this lawsuit.[4] Mr. Hanford died on January 8, 1997, before the government had taken any action on Ms. Hanford's application for permanent residence. On May 9, 2002, U.S. Citizenship & Immigration Services ("USCIS") denied Ms. Hanford's Form I-485 application because Plaintiff was "no longer the spouse of a citizen of the United States." Letter from Kenneth L. Pasquarell, District Director, U.S. Dep't of Justice, Immigration & Naturalization Service, to Gwendolyn Naag Hanford regarding Decision on Application for Status as Permanent Resident (May 9, 2002) (Supplement to Def.s' Mot. for Summ. J. ex. C (July 19, 2009) [Docket Entry No. 35].).

Ms. Hanford filed her complaint in this Court seeking declaratory and injunctive relief on September 25, 2008. She brought the action under the Administrative Procedure Act (APA), 5

---

[1] Immigration & Nationality Act § 214(d). For ease in reference, initial citations to immigration laws will refer to both the United States Code (in text) and the Immigration & Nationality Act (in a footnote).

[2] Mr. Hanford filed the form with the Immigration & Naturalization Service in the U.S. Department of Justice. The duties of this agency are now with U.S. Citizenship & Immigration Services in the Department of Homeland Security; the Acting Director and Secretary being the named Defendants in this lawsuit.

[3] Immigration & Nationality Act § 245.

[4] Defendants received the Form I-485 on January 24, 1997.

2

U.S.C. § 701 *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, and 28 U.S.C. § 1331. On November 3, 2008, removal proceedings were initiated against her when a Notice to Appear before an Immigration Judge was served.

On June 16, 2009, this Court denied Defendants' motion to dismiss. Order (June 16, 2009) (Docket Entry No. 27). In the Order, the Court requested that the parties discuss the proper statutory starting point for consideration in their summary judgment briefs in light of analogous cases in other circuits. Plaintiff filed a motion for summary judgment and the Defendants filed a cross motion for summary judgment. This Court now considers these motions and each parties' responses.

**Jurisdiction**

This Court has jurisdiction under 28 U.S.C. § 1331 and Section 704 of the APA, 5 U.S.C. § 704. Typically, the courts "lack jurisdiction to review the denial of discretionary relief under 8 U.S.C. § 1255." *Hadwani v. Gonzales*, 445 F.3d 798, 801 (5th Cir. 2006). As the parties have briefed and has been the case in other circuits that have evaluated analogous situations, however, this is a "purely legal question and does not implicate agency discretion," rendering the jurisdictional bar of the Immigration & Nationality Act, 8 U.S.C. § 1252(a)(2)(B)(ii),[5] inapplicable. *See Robinson v. Napolitano*, 554 F.3d 358, 360 (3d Cir. 2009) (addressing an analogous situation in which an immigrant spouse's U.S. citizen spouse died prior to the USCIS's evaluation of her Form I-485 application).

---

[5]Immigration & Nationality Act § 242.

## Standard of Review

The courts are to provide deference to agency interpretations of federal statute. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Perez Pimentel v. Mukasey*, 530 F.3d 321, 324 (5th Cir. 2008). In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, the Supreme Court articulated a two-part inquiry.

> We first ask whether Congress has spoken directly to the precise question at issue. If Congress's intent is clear, the . . . court must give effect to that intent. However, if the statute is silent or ambiguous with respect to the specific issue, we ask only whether the agency's answer is based on a permissible construction of the statute.

*Perez Pimental*, 530 F.3d at 324 (internal quotation marks and citations omitted).

## Statutory Scheme

To become a lawful permanent resident under the facts presented in this case, a foreign citizen who is the fiancée of a U.S. citizen must follow four steps. First, the Immigration & Nationality Act requires that the non-citizen obtain a K-1 visa filed by herself and her U.S. citizen fiancé. *See* 8 U.S.C. § 1184(d). The statute requires that the couple have met in person within two years of filing the petition, that the couple "have a bona fide intention to marry, and are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival . . . ." *Id.* § 1184(d)(1).

Second, after receiving the K-1 visa, the non-citizen fiancée can enter the United States to marry the U.S. citizen fiancé. "In the event the marriage with the petitioner does not occur within three months after the admission of the said alien and minor children, they shall be required to depart from the United States . . . ." *Id.*

Third, after the marriage, the non-citizen spouse can apply to adjust her status for lawful permanent residence. 8 C.F.R. § 245.2(c). Non-citizen spouses must adjust their status pursuant to 8 U.S.C. § 1255.[6] A subsection of the statute specifically states that the K visaholder can only adjust his or her status only "as a result of the marriage of the nonimmigrant . . . to the citizen who filed the petition to accord that alien's nonimmigrant status." *Id.* § 1255(d).

In *Choin v. Mukasey*, 537 F.3d 1116 (9th Cir. 2008), the court of appeals provided a thorough explanation of the fourth step.

> Now, K visaholders can first adjust only to conditional permanent resident status. 8 U.S.C. § 1255(d). Section 216 of the INA now provides that, for the first two years of permanent resident status, spouses of U.S. citizens are only conditional permanent residents. Upon the two-year anniversary of gaining conditional permanent resident status, the couple can jointly petition to have the non-citizen's conditional tag removed. 8 U.S.C. § 1186a(c)(1)(A). In the joint petition, the couple must affirm that they are still married and that they did not enter into marriage for immigration purposes. 8 U.S.C. § 1186a(d)(1). They must also provide information about their place of residence and their employment history over the previous two years. *Id.* If the non-citizen is unable to file the joint petition because her marriage has ended, she may apply for a waiver of the petition requirement by attesting that her marriage was entered into in good faith. 8 U.S.C. § 1186a(c)(4)(B).[7]

*Id.* at 1119.

The parties do not dispute that Ms. Hanford complied with the statutory framework outlined above. Ms. Hanford completed the first step: She obtained a K-1 visa based on a successful petition from her citizen fiancée via his filing of Form 129-F. Ms. Hanford completed the second step: She entered the United States with the intention to marry her citizen fiancé and married him within ninety days of her arrival. Ms. Hanford completed the third step: She filed Form I-485 to adjust her status to conditional permanent resident. The Immigration & Naturalization Service failed to act on her

---

[6]Immigration & Nationality Act § 245.

[7]Immigration & Nationality Act § 216.

5

application for nearly five years. Consequently, Ms. Hanford never became a conditional permanent resident and could never complete the fourth step to adjust her status. Ms. Hanford did not divorce Mr. Hanford prior to his death. There is no indication in the record that Ms. Hanford has remarried and is seeking adjustment of her status based on a marriage to another U.S. citizen.

The relevant portion of the statute in question provides as follows:

> The Attorney General may not adjust . . . the status of a nonimmigrant alien described in [8 U.S.C. § 1101(a)(15)(K)][8] except to that of an alien lawfully admitted to the United States on a conditional basis under section 1186a of this title as a result of the marriage of the nonimmigrant . . . to the citizen who filed the petition to accord that alien's nonimmigrant status under [8 U.S.C. § 1101(a)(15)(K)].

8 U.S.C. § 1255(d).

## Matter of First Impression

Neither party provides this court with established precedent in this Circuit. Furthermore, the majority of the cases cited in either party's briefs address analogous circumstances with none clearly on point. For example, the parties provide case law involving situations in which an applicant filed a Form I-130 Petition for Alien Relative in combination with a Form I-485 Application to Register Permanent Residence or Adjust Status. Here, Ms. Hanford filed a Form I-129F in combination with a Form I-485. Although in practice, the filing of Form I-129F with Form I-485 or filing Form I-130 with Form I-485, will have the same effect (assuming both are approved), the statutory framework that underlies the two combinations of forms is different.

In *Choin v. Mukasey*, in which the Ninth Circuit Court of Appeals evaluated a Form

---

[8] Immigration & Nationality Act § 101(a)(15)(K). This section refers to the definition of an immigrant who obtains a K visa.

I-129F/Form I-485 combination, the procedural posture differed from this case. The Ninth Circuit evaluated the case after an Immigration Judge ordered Choin's removal, the Board of Immigration Appeals denied her appeal, and the Board denied her motion for reconsideration. Unlike Choin, Ms. Hanford commenced this case to challenge the legality of the denial she received from the USCIS rather than to appeal a ruling of the Board of Immigration Appeals. Consequently, the analysis conducted by the Ninth Circuit does not apply directly to this situation.

This appears to be an issue of first impression in this Circuit. Neither party has provided, nor can this Court find, any case involving the USCIS's denial of a Form I-485 application after the death of a spouse following approval of a Form I-129F, much less an analogous situation involving Form I-130.

## Analysis

Under the basic rules of statutory construction, the court "will follow the literal, plain language of a statute unless doing so would lead to an absurd result." *United States v. Retirement Servs. Group*, 302 F.3d 425, 435 (5th Cir. 2002). The statute allows for the adjustment of eligibility for a K-1 visaholder "*as a result of* the marriage of the nonimmigrant . . . to the citizen who filed the petition to [obtain the K visa]." 8 U.S.C. § 1255(d) (emphasis added). Section 1255 requires that the Attorney General only adjust the status of a nonimmigrant alien who enters on a K-1 visa based on the marriage of the nonimmigrant alien to the citizen who filed the I-129F petition on her behalf.

In *Markovski v. Gonzales*, 486 F.3d 108, 110 (4th Cir. 2007), and *Kalal v. Gonzalez*, 402 F.3d 948, 951 (9th Cir. 2005), the Fourth and Ninth Circuit Courts of Appeal found that the plain language of the statute bars K visaholders from adjusting to permanent resident status on the basis

7

of a marriage to a person other than the person who filed the petition on his or her behalf. In *Markovski*, the petitioning party had divorced his spouse and then subsequently attempted to adjust his status through his employer. 486 F.3d at 109. While adjusting his status based on the new application, he learned that an immigration judge had entered a removal order based on his previous application, which was denied when his ex-wife failed to forward the notice of hearing to the petitioner. *Id.* The Court of Appeals rejected Markovski's argument that he could adjust his status via his employment. *Id.* at 110. The court declared: "On its face, [8 U.S.C. § 1255(d)] prohibits an alien who arrived on the K-1 fiancé visa from adjusting his status on any basis whatever save for the marriage to the K-1 visa sponsor." *Id.*

In *Kalal*, the petitioning party entered the country on a K-1 visa, but failed to marry the individual who petitioned the government to obtain her K-1 visa. 402 F.3d at 949. She subsequently married another U.S. citizen and attempted to adjust her status based on that marriage. *Id.* Addressing numerous arguments presented by the Plaintiff, the Court of Appeals found that Kalal was removable under the Immigration & Nationality Act since she failed to marry her original fiancé as conditioned by her receipt of the K-1 visa and that Kalal could not adjust her status under 8 U.S.C. § 1255. *Id.* at 951.

Unlike the circumstances in *Kalal* and *Markovski*, Ms. Hanford complied with all the requirements of the Immigration & Nationality Act. Ms. Hanford obtained a K-1 visa pursuant to a statute that required that the marriage occur within three months. She married the U.S. citizen who petitioned for her K-1 visa within the required three month period. Then, she applied to adjust her status as a result of her marriage to the U.S. citizen petitioner. Unlike Ms. Kalal, Ms. Hanford is not basing her petition on the marriage to another person. Unlike Mr. Markovski, Ms. Hanford is not

8

attempting to change the basis of her application from marriage to employment. Under the clear language of the statute, Ms. Hanford is seeking to adjust her status as a result of her marriage to Steven Allen Hanford, the U.S. citizen who petitioned the government to obtain her K-1 visa.

Moreover, a Court's interpretation of a statute "depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. United States Postal Serv.*, 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006). Statutes involving a regulatory scheme should be internally consistent. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000). Courts in other circuits have found that the statutes involving the analogous situation in which the death of a foreign-born individual's U.S. citizen spouse who filed Form I-130 and Form I-485 do not terminate the foreign-born individual's application to adjust his or her immigration status. *See, e.g., Lockhart v. Napolitano*, 573 F.3d 251, 259 (6th Cir. 2009); *Freeman v. Gonzales*, 444 F.3d 1031, 1041–42 (9th Cir. 2006); *Taing v. Chertoff*, 526 F. Supp. 2d 177, 187 (D. Mass. 2007). The court in *Freeman v. Gonzales* stated in its evaluation of the statute: "When the citizen spouse dies after he has filed Form 130 and otherwise satisfied the necessary requirements, the duration of the marriage is of no consequence (unless DHS finds the marriage to be a sham or otherwise fraudulent) . . ." 444 F.3d at 1042. Notably, in its evaluation of the term "spouse," the Sixth Circuit Court of Appeals determined that, under the Immigration & Nationality Act, the "common, ordinary meaning of the term 'spouse' includes 'surviving spouses.'" *Lockhart*, 573 F.3d at 260.

In this situation, when the citizen spouse dies after he has filed Form 129F and otherwise satisfied the necessary requirements, the duration of the marriage is of no consequence. The

9

Department of Homeland Security may still find the marriage to be a sham or otherwise fraudulent. Furthermore, accepting the Defendants' interpretation of the statute would lead to inconsistencies within the statute. For example, if the agency had addressed Ms. Hanford's application before Mr. Hanford died, the adjustment of status could have been granted even though the couple had not been married for two years. *See* 8 U.S.C. § 1186a. In addition, as the majority of other courts have determined, the death of a spouse within the first two years of marriage who filed Form I-130 while Form I-485 is pending does not automatically terminate the immigrant-widow(er)'s application to adjust status. Accepting the Defendants' interpretation of the statue would mean that a spouse—as in this situation—who entered the United States based on an approved Form 129F would have her application to adjust status automatically terminated even though a spouse in the closely analogous situation could adjust his or her status. It is unlikely that Congress would have intended such inconsistencies within this regulatory framework.

**Conclusion**

Under the plain language of the statute, Congress's intent is clear: The Attorney General is precluded from adjusting the status of a nonimmigrant except as a result of the marriage of the nonimmigrant to the very U.S. citizen who filed the petition in the first place to grant that alien's nonimmigrant status. Situations such as Ms. Hanford's meet the exemption. Plaintiff is entitled to adjustment of her legal status to that of permanent resident under the language of the statute because her legally filed application is a result of her marriage to the U.S. citizen who filed Form I-129F to obtain her nonimmigrant status. Consequently, Plaintiff's motion for summary judgment is GRANTED and Defendants' cross-motion for summary judgment is DENIED. Accordingly,

because there are no material facts in dispute, this Court renders judgment in favor of Plaintiff-petitioner Gwendolyn Naag Hanford.

It is so ORDERED.

SIGNED this 17th day of September, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE